IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ESTATE OF BECKY MCILRATH, by and through its co-administrators, JAREN DEPENNING and BEVERLY DEPENNING; JAMES HARLEY MCILRATH IV, individually and by and through the ESTATE OF BECKY MCILRATH; and G.E.M., by and through the ESTATE OF BECKY MCILRATH and her father and next friend, JAMES HARLEY MCILRATH III, <br><br>      Plaintiffs, <br><br>vs. <br><br>THE IOWA CLINIC, P.C.; THOMAS HANSEN, M.D.; PIER OSWEILER, ARNP; ENDO PHARMACEUTICALS, INC.; and ENDO HEALTH SOLUTIONS, <br><br>      Defendants. | Case No. _____ |

**DEFENDANTS ENDO HEALTH SOLUTIONS INC. AND
<u>ENDO PHARMACEUTICALS INC.'S NOTICE OF REMOVAL</u>**

1

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 3

BACKGROUND ....................................................................................................................... 5

VENUE AND JURISDICTION ................................................................................................ 6

   I.   THERE IS COMPLETE DIVERSITY OF CITIZENSHIP BETWEEN
PLAINTIFFS AND THE MANUFACTURER DEFENDANTS .......................................... 7

      A.  **Plaintiffs Are Diverse from the Manufacturer Defendants** ....................................... 7

          1.  Plaintiffs Are Iowa Citizens……………………………………………………..7
          2.  None of the Manufacturer Defendants Is a Citizen of Iowa…………………………….8

      B.  **The Citizenship of the Medical Provider Defendants Should Be Ignored** ................ 8

          1.  The Medical Provider Defendants Should Be Severed Under Rule 21……………………...8
          2.  The Medical Provider Defendants Are Also Fraudulently Misjoined………………...13

   II.   THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 ........................................ 14

   III.   ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED ......................... 15

      A.  **This Notice of Removal Is Timely** ................................................................ 15

      B.  **The Consent of Improperly Joined Defendants is Unnecessary** .............................. 15

CONCLUSION ........................................................................................................................ 16

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Endo Health Solutions Inc. (incorrectly named in the caption as "Endo Health Solutions") and Endo Pharmaceuticals Inc. (incorrectly named in the caption as "Endo Pharmaceuticals, Inc.") (collectively, "Endo") hereby give notice of removal of this action, captioned *Estate of Becky McIlrath v. The Iowa Clinic, P.C. et al.*, bearing case number LACL146210, from the District Court for Polk County, Iowa, to the United States District Court for the Southern District of Iowa. Pursuant to 28 U.S.C. § 1446(a), Endo provides the following statement of the grounds for removal:

## INTRODUCTION

1. This action is one of more than 2,000 related lawsuits filed against manufacturers of FDA-approved prescription opioid medications relating to alleged harms stemming from abuse of these medications. On December 5, 2017, the Judicial Panel on Multidistrict Litigation created a Multidistrict Litigation ("MDL") in the Northern District of Ohio for these actions, *i.e.*, cases in which plaintiffs allege that "manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017). As the JPML found in centralizing these cases, "centralization will substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions. Centralization will also allow a single transferee judge to coordinate with numerous cases pending in state courts." *Id.* at 1379. To date, more than 2,000 actions have been transferred to the opiate MDL, with more (including this action) sure to follow.

2. A common thread in many opioid-related cases is plaintiffs tacking on unrelated claims against a rotating cast of non-diverse defendants—often local doctors and medical centers—

in an effort to destroy diversity jurisdiction. That is the case here. Because neither Endo entity is a citizen of Iowa, Plaintiffs added claims against an Iowa doctor, nurse practitioner, and clinic accused of medical negligence.

3. Federal jurisdiction cannot be so easily evaded. Under settled precedent, when (as here) a plaintiff sues diverse defendants and includes materially distinct claims against one or more non-diverse defendants in an effort to destroy diversity, it is proper for courts to ignore the citizenship of the non-diverse defendants, sever them, and retain diversity jurisdiction over the diverse parties.

4. Thus, the basis for removal here is materially identical to hundreds of substantially similar opioid-related cases previously removed to federal court and transferred to the MDL: there is complete diversity of citizenship between Plaintiffs, on the one hand, and the diverse pharmaceutical manufacturers, on the other. The citizenship of the non-diverse doctor, nurse practitioner, and clinic should be ignored because they are subject to severance under Rule 21 (because they are unnecessary and dispensable parties under Rule 19 as well as misjoined under Rule 20), and are fraudulently misjoined.

5. Though any motion to remand would be without merit, all remand questions should be resolved by the MDL court. As numerous courts in similar opioid-related actions have recently recognized, judicial economy would be furthered if all removal questions were addressed by the MDL court following the transfer of this case to the MDL. *E.g.*, Order, *City of Alexandria v. Purdue Pharma L.P. et al.*, No. 1:18-cv-01536-CMH-JFA (E.D. Va. Jan. 30, 2019), Dkt. 63 at 4 ("Having a single judge rule on the remand issues guarantees consistent rulings and prevents duplicative judicial efforts, promoting judicial efficiency."); *City of Galax v. Purdue Pharma, L.P.*, No. 7:18-cv-00617, 2019 WL 653010, at *4 (W.D. Va. Feb. 14, 2019) ("[B]oth judicial economy and

4

consistency are served by allowing a single court—the Opiate MDL court—to address the jurisdictional issues."); *Bd. of Cty. Comm'rs of Seminole Cty. v. Purdue Pharma L.P.*, No. CIV-18-372-JWL, 2019 WL 1474397, at *2 (E.D. Okla. Apr. 3, 2019) ("[A] stay . . . allow[s] all pretrial matters in the instant case, including the remand motion, to be resolved in the MDL."). But to the extent this Court addresses the removal question here, and as discussed more fully below, there is federal diversity jurisdiction over this case.

## BACKGROUND

6. On November 1, 2019, Plaintiffs filed this action in the District Court of Polk County, in the State of Iowa. On November 13, 2019, Plaintiffs filed an amended petition ("the Petition") naming the following defendants:

    a. "Manufacturer Defendants" — Endo Pharmaceuticals Inc. and Endo Health Solutions Inc.

    b. "Medical Provider Defendants" — The Iowa Clinic, P.C.; Thomas Hansen, M.D.; and Pier Osweiler, ARNP.

7. Like many cases previously removed to federal court and transferred to the MDL, the thrust of this Petition is that the Manufacturer Defendants engaged in a marketing and promotional campaign based on misrepresentations about the risks and benefits of FDA-approved prescription opioid medications. (Pet. ¶¶ 4, 33-125.) According to Plaintiffs, the Manufacturer Defendants engaged in a "deceptive, negligent, reckless and fraudulent marketing scheme" to convince prescribers and patients that opioid medications "can and should be used to treat chronic pain." (*Id.* ¶¶ 80-81.) Plaintiffs further assert that the Manufacturer Defendants "used both direct marketing and unbranded advertising disseminated by seemingly independent third parties to spread

5

false and deceptive statements about the risks and benefits of long-term opioid use." (*Id.* ¶ 35.) Both Manufacturer Defendants are citizens of states other than Iowa. (*Id.* ¶¶ 21-22.)

8. Plaintiffs' allegations against the Medical Provider Defendants—an Iowa doctor, nurse practitioner, and an affiliated medical clinic—center on entirely different alleged conduct. In short, Plaintiffs allege that the Medical Provider Defendants were medically negligent in their treatment of Ms. McIlrath. For example, Plaintiffs allege that the Medical Provider Defendants "deviated from the appropriate standard of care" by "negligently treating [Ms. McIlrath's] pain, negligently prescribing opioids, and negligently monitoring [Ms. McIlrath's] opioid use." (*Id.* ¶¶ 28, 31-32.) The Medical Provider Defendants are citizens of Iowa. (*See id.* ¶¶ 15-18.)

9. The Petition asserts seven causes of action. As to the Medical Provider Defendants only, the Petition asserts a claim for professional negligence. (*Id.* ¶¶ 126-38.) As to the Manufacturer Defendants only, the Petition asserts claims for negligence, failure to warn, common law fraud, and a violation of the Iowa Consumer Frauds Act. (*Id.* ¶¶ 139-68.) Finally, the Petition asserts two additional causes of action against "all defendants" for loss of consortium on behalf of G.E.M. and James H. McIlrath, and a count for punitive damages. (*Id.* ¶¶ 169-72.)

10. Endo received the original petition through service on November 11, 2019, and the amended petition through electronic service on November 13, 2019. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Endo is attached hereto as **Exhibit 1**.

### VENUE AND JURISDICTION

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 95, 1391, 1441(a), and 1446(a) because the District Court for Polk County, where the action was filed, is a state court within the Southern District of Iowa.

6

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because (1) there is complete diversity of citizenship between Plaintiffs and all properly joined Defendants; (2) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (3) all other requirements for removal have been satisfied.

## I. THERE IS COMPLETE DIVERSITY OF CITIZENSHIP BETWEEN PLAINTIFFS AND THE MANUFACTURER DEFENDANTS

13. There is complete diversity of citizenship here because the Plaintiff-representatives of the Estate of Becky McIlrath are citizens of Iowa and the Manufacturer Defendants are citizens of states other than Iowa, *see* Part I.A *infra*, and the citizenship of the Medical Provider Defendants—the only non-diverse Defendants—should be ignored for purposes of diversity jurisdiction, *see* Part I.B *infra*. This is because the Medical Provider Defendants are subject to severance under Federal Rule of Civil Procedure 21 and are also fraudulently misjoined.

### A. Plaintiffs Are Diverse from the Manufacturer Defendants

#### 1. Plaintiffs Are Iowa Citizens

14. The Petition alleges that "[t]his action is brought by the duly authorized and acting Co-Administrators of the Estate of Becky McIlrath." (Pet. ¶ 10.) For the purposes of diversity jurisdiction, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). Though the Petition does not plead citizenship information for Ms. McIlrath, her publicly available obituary indicates that she died at her home in Iowa. Further, the Petition alleges that James McIlrath and G.E.M. —Ms. McIlrath's children—are citizens of Iowa. (Pet. ¶¶ 11-12.) On information and belief, Ms. McIlrath was a citizen of Iowa. Accordingly, the Plaintiff-representatives of her estate are citizens of Iowa for the purposes of diversity jurisdiction.

### 2. None of the Manufacturer Defendants Is a Citizen of Iowa

15. For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).

16. Applying these principles, none of the Manufacturer Defendants is a citizen of Iowa.

17. Defendant Endo Health Solutions Inc. is a corporation organized under the laws of Delaware with its principal place of business in Malvern, Pennsylvania. (Pet. ¶ 21.)

18. Defendant Endo Pharmaceuticals Inc. is a corporation organized under the laws of Delaware with its principal place of business in Malvern, Pennsylvania. (*Id.* ¶ 22.)

19. Accordingly, both Manufacturer Defendants are citizens of states other than Iowa.

### B. The Citizenship of the Medical Provider Defendants Should Be Ignored

#### 1. The Medical Provider Defendants Should Be Severed Under Rule 21

20. Even where the face of a complaint shows a lack of complete diversity, removal based on diversity jurisdiction is nonetheless proper if the claims against the non-diverse defendants are severable under Federal Rule of Civil Procedure 21. Defendants are severable under Rule 21 if they are either unnecessary or dispensable under Rule 19, or if the claims against them are sufficiently distinct from claims against other defendants under Rule 20. Here, the Medical Provider Defendants should be severed on both grounds, each of which preserves diversity jurisdiction as to the Manufacturer Defendants.

21. It is settled law in the Eighth Circuit that Rule 21 may be invoked to "drop[] a non-diverse party who is not indispensable, at any stage of the action." *Fetzer v. Cities Serv. Oil Co.*, 572 F.2d 1250, 1253 n.4 (8th Cir. 1978). As the United States Supreme Court has held, "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." *Newman-Green, Inc. v. Alfonzo-*

*Larrain*, 490 U.S. 826, 832 (1989); *see also Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 308 (8th Cir. 2009) (same).

22. In deciding remand motions, courts have repeatedly severed non-diverse defendants under Rule 21 to perfect diversity jurisdiction over diverse defendants in similar circumstances. *Joseph v. Baxter International, Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009), is particularly instructive. There, the plaintiffs, citizens of Louisiana, brought a products liability action against the out-of-state manufacturer of the drug Heparin. *Id.* at 870. Before the case was removed, the plaintiffs amended their complaint to add as defendants various non-diverse healthcare providers, alleging that they engaged in "negligent acts and omissions in the administration of Heparin." *Id.* at 871. Despite the addition of these non-diverse healthcare provider defendants, the district court denied remand as to the diverse manufacturer defendant.

23. The court reasoned that the healthcare provider defendants were "not necessary parties as the resolution of a claim against them would not necessarily resolve the [plaintiffs'] claim against [the manufacturer]"; the medical malpractice claims against the healthcare providers "differ from the [plaintiffs'] products liability claim" against the manufacturer. *Id.* at 872. And, the court explained, the healthcare provider defendants were dispensable because the plaintiffs "retain an adequate remedy against the Healthcare Defendants as they can proceed with their claims in state court." *Id.* at 873. Given the separate factual basis for plaintiffs' medical malpractice claims against the healthcare providers, the court found that it could "sever them from the claims against [the manufacturer], and in doing so, perfect diversity jurisdiction over [the manufacturer]." *Id.* at 874.

24. Numerous other courts have followed the same approach and severed non-diverse healthcare providers from claims asserted against diverse product manufacturers. *See, e.g.*, *Johnson v. Welsh Equip., Inc.*, 518 F. Supp. 2d 1080, 1086 (D. Minn. 2007); *McElroy v. Hamilton Cty. Bd.*

*of Educ.*, No. 1:12-cv-297, 2012 WL 12871469, at *2-3 (E.D. Tenn. Dec. 20, 2012); *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 705-07 (D. Md. 2015); *Cooke-Bates v. Bayer Corp.*, No. 3:10-cv-261, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8, 2010); *Mayfield v. London Women's Care, PLLC*, No. 15-19-DLB, 2015 WL 3440492, at *5 (E.D. Ky. May 28, 2015).

25. Likewise, here, this Court should sever the Medical Provider Defendants under Rule 21 and deny remand as to the remaining defendants because the Medical Provider Defendants are both unnecessary and dispensable under Rule 19. Alleged joint tortfeasors like the Medical Provider Defendants are unnecessary parties as a matter of settled law. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7-8 (1990) (holding that joint tortfeasors are not necessary parties under Rule 19); *Johnson*, 518 F. Supp. 2d at 1086 (citing Temple and explaining that "[a]s joint tortfeasors, [] nondiverse defendants . . . are permissive, not indispensable, parties").

26. Moreover, just like *Baxter* (and many other cases), here Plaintiffs' claims against the Manufacturer Defendants are factually distinct from those against the Medical Provider Defendants. Specifically, Plaintiffs allege that the Manufacturer Defendants misrepresented the risks of FDA-approved prescription opioid medications in marketing and promoting the medications. (Pet. ¶¶ 4, 33-125.)

27. By contrast, Plaintiffs' allegations against the Medical Provider Defendants do not relate to marketing or promotion of opioid medications. Instead, Plaintiffs allege that the Medical Provider Defendants committed "medical errors" by "negligently treating [Ms. McIlrath's] pain, negligently prescribing opioids, and negligently monitoring [Ms. McIlrath's] opioid use, which led to an overdose of said prescriptions that took her life." (*Id.* ¶ 28, 30.) There is no overlap between the factual allegations against the Manufacturer Defendants and Medical Provider Defendants as would make the Medical Provider Defendants necessary or indispensable parties under Rule 19.

28. Beyond Rule 19, the claims against the Medical Provider Defendants are also misjoined under Rule 20, which provides a distinct basis for severance. Rule 21 permits severance of claims against the Medical Provider Defendants that do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as the claims against the remaining defendants. Fed. R. Civ. P. 20(a)(1)(A); *see Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach, LLP*, No. Civ.A. 02-2435-CM, 2003 WL 21313957, at *5 (D. Kan. May 23, 2003) ("Rule 21 is a mechanism for correcting . . . the misjoinder . . . of parties or claims" which "arises when the claims and parties fail to satisfy any of the conditions of permissive joinder under Rule 20(a).") (citation omitted). Courts in this Circuit and other circuits have repeatedly denied remand as to diverse defendants and severed claims against non-diverse defendants where the claims against the non-diverse defendants were separate and distinct, and arose from different transactions or occurrences. *See, e.g., In re Stryker Rejuvenate & ABG II Hip Implant Prod. Liab. Litig.*, No. CIV. 13-1811 DWF/FLN, 2013 WL 6511855, at *4 (D. Minn. Dec. 12, 2013) (severing and remanding medical malpractice claims brought against non-diverse healthcare providers while retaining jurisdiction over product liability claims brought against diverse product manufacturer because "the claims do not both involve common questions of law or fact and assert joint, several, or alternative liability arising out of the same transaction, occurrence, or series of transactions or occurrences.")[1] Because of the distinct

---

[1] *See also Westley v. Progressive Specialty Ins. Co.*, No. 14-1410, 2014 WL 4489620, at *6 (E.D. La. Sept. 10, 2014) (severing non-diverse defendant and denying remand as to diverse defendants where the claims would "be decided based on entirely different evidence"); *Loeffelbein*, 2003 WL 21313957, at *6 (severing non-diverse defendant and denying remand as to diverse defendants where the claims "clearly arise from two different sets of facts"); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 502-05 (E.D. Cal. 2008); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 683 (D. Nev. 2004); *DirecTV, Inc. v. Beecher*, 296 F. Supp. 2d 937, 945 (S.D. Ind. 2003) (severing misjoined claims under Rule 21 where plaintiff "allege[d] that many individuals have wronged it in the same way, but in separate transactions or occurrences"); *Randleel v. Pizza Hut of Am., Inc.*, 182 F.R.D. 542, 543 (N.D. Ill. 1998) (severing misjoined claims where "the factual scenarios underlying each incident are different, the times are different, and the people involved are different" (footnote omitted)).

factual underpinnings of the claims against the Manufacturer Defendants and the Medical Provider Defendants, these claims cannot properly be joined together.

29. Severance is particularly appropriate here because it will enable the diverse parties to benefit from the significant efficiencies stemming from participation in coordinated MDL proceedings in the Northern District of Ohio. Courts across the country have repeatedly recognized the importance of these efficiencies in severing non-diverse defendants to perfect diversity jurisdiction. *E.g.*, *Sullivan*, 117 F. Supp. 3d at 707 ("Severance is particularly appropriate in this case because it would allow for the transfer of [plaintiff's] claims against the [diverse manufacturer] to Multi-District Litigation."); *Sutton*, 251 F.R.D. at 505 ("Plaintiffs' claims against the [non-diverse] Defendants are severed and remanded pursuant to Rule 21 . . . so as to preserve the removing Defendants' right to removal in the remaining multidistrict action and preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum."); *Baxter*, 614 F. Supp. 2d at 873 ("[P]laintiffs will benefit from the MDL process: they will not bear the burden of having to engage on their own, and at their sole expense, in discovery vis-à-vis [the diverse manufacturer]."); *Mayfield*, 2015 WL 3440492, at *5 ("[I]f the surviving federal claims are transferred to the Ethicon MDL, the prospect of dual litigation has undeniable upside.").

30. As one court explained in materially identical circumstances, "[t]he Court's decision to sever . . . [the non-diverse healthcare provider] will not greatly prejudice [plaintiff], but failure to do so could subject [the diverse manufacturer defendant] to considerable prejudice. [Plaintiff] will be forced to pursue two separate suits, but it will not alone bear the administrative and financial burdens of pursuing its claims against [the manufacturer] in the MDL proceedings. For its part, [the manufacturer] could be exposed to numerous related suits if courts considering suits similar to

this one refused to sever claims against [the manufacturer] from those against the providers that prescribed [the drug]." *Cooke-Bates*, 2010 WL 3984830, at *4 (internal citations omitted).

31. That Plaintiffs assert loss of consortium claims against "all Defendants" changes nothing. Severance is appropriate because the *factual basis* for Plaintiffs' claims against the Manufacturer Defendants (alleged misrepresentations in promoting opioid medications), on the one hand, are separate and distinct from the factual basis for Plaintiffs' claims against the Medical Provider Defendants (malpractice by prescription and dispensation of opioid medications that violated medical and pharmaceutical standards of care), on the other hand. *See Loeffelbein*, 2003 WL 21313957, at *6 ("While plaintiffs do not distinguish between each of the defendants in the individual counts of the petition, the counts clearly arise from two different sets of facts."); *Nelson v. Aim Advisors, Inc.*, No. 01-CV-0282-MJR, 2002 WL 442189, at *3 (S.D. Ill. Mar. 8, 2002) ("Although Plaintiffs' claims against all Defendants are pled under the same legal theory, it is only in this abstract sense that Plaintiffs' claims share anything in common . . . [and] does not mean that there are common issues of law and fact sufficient to satisfy Rule 20(a).").

### 2. The Medical Provider Defendants Are Also Fraudulently Misjoined

32. As an alternative to severance under Rule 21, the citizenship of the Medical Provider Defendants should be ignored for purposes of diversity jurisdiction under the fraudulent misjoinder doctrine. Fraudulent misjoinder, also called procedural misjoinder, "refers to the joining of claims into one suit in order to defeat diversity jurisdiction where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard." *Reed v. Am. Med. Sec. Grp., Inc.*, 324 F. Supp. 2d 798, 803 n.8 (S.D. Miss. 2004) (citation and internal quotation marks omitted); *see also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility

of a cause of action.") (footnote omitted), *abrogated on another ground in Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

33. The Eighth Circuit has neither accepted nor rejected the fraudulent misjoinder doctrine. *See In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010). Nonetheless, in opioid-related cases like this one, courts recently relied on the fraudulent misjoinder doctrine to ignore the citizenship of non-diverse healthcare provider defendants and deny remand based on diversity jurisdiction. *Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 263 F. Supp. 3d 639, 645-47 (S.D. W. Va. 2017); *City of Huntington v. AmerisourceBergen Drug Corp.*, Civ. A. No. 3:17-01362, 2017 WL 3317300, at *4-5 (S.D. W. Va. Aug. 3, 2017).

34. Even if the Court finds that the Medical Provider Defendants are not subject to severance under Rule 21, it should find the claims against them misjoined under the fraudulent misjoinder doctrine.

35. In sum, because Plaintiffs are citizens of Iowa, and because none of the properly joined Defendants is a citizen of Iowa, there is complete diversity of citizenship. *See* 28 U.S.C. § 1332(a).

## II. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

36. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).

37. Plaintiffs seek damages arising from the death of Becky McIlrath, including damages for "pain and suffering," "loss of income to the estate, past medical expenses, loss of function," past and future loss of financial support and loss of consortium for Ms. McIlrath's children, and punitive damages. (Pet. ¶¶ 29, 169-72.) Although the Petition does not specify the amount of damages sought, district courts in this circuit routinely find that that the amount in

controversy is satisfied in suits arising from an alleged wrongful death. *See, e.g., Rodgers v. Wolfe*, No. 4:05CV01600ERW, 2006 WL 335716, at *3 (E.D. Mo. Feb. 14, 2006) (explaining that "jury awards to plaintiffs in [wrongful death] cases such as this one routinely exceed $75,000.00"); *Consumers Ins. USA, Inc. v. Fleetwood*, No. 12-3113-CV-S-RED, 2012 WL 13027386, at *2 (W.D. Mo. May 16, 2012) ("[W]rongful death claims . . . are typically worth more than $75,000.") It is thus clear that the alleged amount in controversy exceeds $75,000, exclusive of interest and costs.

## III. ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED

### A. This Notice of Removal Is Timely

38. This Notice of Removal is timely filed. Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. received the original petition through service on November 11, 2019. Because Endo filed the Notice of Removal on December 2, 2019, removal is timely. *See* 28 U.S.C. § 1446(b)(1).

### B. The Consent of Improperly Joined Defendants is Unnecessary

39. When an action is removed pursuant to 28 U.S.C § 1441(a), only "properly joined and served defendants must join in or consent to removal of the action." 28 U.S.C § 1446(b)(2)(A). The Medical Provider Defendants are not properly joined in this action, and thus their consent to removal is not required.

40. By filing this Notice of Removal, Endo does not waive any defense that may be available and reserves all such defenses. If any question arises as to the propriety of the removal to this Court, Endo requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

## CONCLUSION

WHEREFORE, Endo hereby removes this action from the Iowa District Court for Polk County, Case No. LACL146210, to this Honorable Court.

Dated: December 2, 2019     **LEDERER WESTON CRAIG PLC**

By: */s/ J. Michael Weston*
 J. Michael Weston  AT0008405
 118 – 3rd Avenue SE, Suite 700
 P. O. Box 1927
 Cedar Rapids, IA  52406-1927
 Telephone:  (319) 365-1184
 Fax:            (319) 365-1186
 E-mail:  mweston@lwclawyers.com

**ATTORNEYS FOR DEFENDANTS ENDO HEALTH SOLUTIONS INC. and ENDO PHARMACEUTICALS INC.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 2, 2019, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Southern District of Iowa, Central Division and that a true copy of the foregoing instrument was served upon all parties in interest to the above-entitled cause by enclosing the same in an envelope addressed to each party at each party's respective address by U.S. mail. The parties in interest referred to above are:

**ATTORNEY FOR PLAINTIFFS:**
Scott M. Wadding, Esq.
Sease & Wadding
104 Southwest Fourth Street
Des Moines, IA 50309
E-mail: swadding@seasewadding.com

Executed on December 2, 2019 in Cedar Rapids, Iowa.

*/s/ J. Michael Weston*
J. Michael Weston